CHARLES S. CARPENTER, Plaintiff, *v.* CHARLES B. SEARS and Others, Defendants.

Supreme Court, Cayuga County, May 12, 1927.

**Evidence — competency — plaintiff fell against raised door of cellar opening and suffered injuries — evidence adduced by defendants as to instructions as to guarding opening in sidewalk not incompetent where plaintiff already had developed testimony indicating lack of care — verdict not against weight of evidence — new trial denied.**

Plaintiff suffered injuries when he fell against the raised door of a cellar opening in the sidewalk in front of premises owned by defendant landlords and occupied by defendant tenants. Evidence adduced by defendant landlords, that the tenants had instructed third parties to watch the opening while the doors were up and the opening in use, was competent, where it appears that plaintiff, on cross-examination, developed testimony from which he expected the jury to infer that no care had been taken in protecting persons using the sidewalk from injuries and had asked the defendants' witnesses specifically as to what they did in that respect; it was clearly competent for defendants thereafter to show in detail what steps they had taken toward such protection. Moreover, if, as plaintiff claims, the evidence was incompetent, the plaintiff ought not to have set the example of introducing it.

Nor do the circumstances warrant that the verdict of no cause of action be set aside and a new trial granted on the ground that the verdict is against the weight of the evidence.

MOTION by plaintiff for a new trial under section 549 of the Civil Practice Act.

*Benjamin C. Meade,* for the plaintiff.

*George S. Coburn,* for the defendants Sears and Culver.

*Harry A. Gleason,* for the defendants Georges and Massourides.

RIPPEY, J. There was an opening in the sidewalk on the north side of Genesee street in the city of Auburn, in front of the premises owned by the defendants Sears & Culver, and occupied by the tenant defendants, Georges and Massourides, which furnished an entrance to the cellar underneath the building. This opening was substantially flush with the front of the building and was three feet, two inches wide, by three feet, eight inches long. The opening was covered by doors, one hinged to the frame on the west side of the opening and the other hinged to the frame on the east side of the opening. There were no locks provided for them and when the entrance to the cellar was in use, the doors were raised and fastened apart by an iron rod, which hooked into slots at the upper outside corner of each door. When the doors were raised, each extended crosswise of the walk and upwards about twenty-two inches. This opening in the walk was made prior to 1884,

but it had a different covering down to 1923. In October, 1923, the construction existing at the time of the accident was put in, in accordance with the requirements of an ordinance of the city of Auburn. There was no evidence that the city had ever granted permission for this opening, but permission was presumed from the long period during which it had existed there. No express permission, other than that implied from or granted by the ordinance in question, was required to remove the former grate covering and replace it with the doors which were in use at the time of the accident.

On April 21, 1925, the date of the accident in question, refuse was being removed from the cellar by an employee of the city through the opening in question. Plaintiff was passing along the street and his attention was temporarily diverted with the result that he ran into the westerly door, which was then standing upright, and knocked it down, but in doing so was thrown forward onto the opposite door, which remained upright, and received the severe injuries of which he complained. He set up two causes of action in his complaint, one based upon the maintenance of a nuisance by the defendants, and the other based upon negligence. The case was most carefully and exhaustively tried and every opportunity was extended to plaintiff to establish the liability of the defendants upon both theories. After submission, the jury rendered a verdict of no cause of action. It cannot be said that the verdict was contrary to or against the weight of the evidence and the plaintiff cannot say that the case was not submitted to the jury in as favorable an aspect as he could reasonably expect.

The plaintiff does, however, insist that he is entitled to a new trial because of a ruling on the admission of evidence which he claims was so prejudicial to him that it must be presumed that it had a determining effect upon the verdict. As before indicated, the action was brought against both the owners and the tenants in possession. The owners and tenants appeared by separate attorneys and each attempted to establish, so far as necessary to absolve his clients from blame, that the other's clients were responsible for the accident. The plaintiff was attempting during the trial, of course, to establish liability on the part of both the tenants and owners. After plaintiff had rested, the defendant Massourides was called to the stand in his own behalf and was questioned only as to what he knew, if anything, about the accident. On cross-examination by plaintiff's counsel, he was asked without objection: " Q. What did you do regarding seeing that that door was properly used when Richardson used it? " And he replied: " A. Put the bar up."

He was also asked whether he did anything with the door when Richardson used it and he replied that he did not, although he said that he saw it in use on previous occasions and the bar holding the doors apart was in proper position on those occasions. He was further asked whether he gave Richardson any boards or barrels to put up around the hole when it was opened. He was then asked: " Q. Did you or your partner go out there and watch it when it was being opened? A. No sir."

There were many other questions along the same line. The witness was thereupon taken in hand by counsel for the defendant owners, who claimed that if there was any negligence on the part of any one, it was the negligence of the tenants and he was permitted to testify, over the objection of plaintiff's counsel, that he had instructed Richardson when he used the doors to put the bar up. Substantially the same situation arose in the examination of the defendant Georges, one of the tenants. Plaintiff's counsel, on cross-examination, exhaustively questioned him with reference to what he did to protect the public from harm while the doors and opening were in use and he was thereafter permitted to testify, over the objection of plaintiff's counsel, that he had instructed third parties to watch the opening while the doors were up and the opening in use.

Plaintiff cites the case of *Bardel* v. *Standard Oil Company* (218 App. Div. 145) upon his claim that it was prejudicial error for the court to admit evidence of instructions given by the defendants to persons authorized to use the opening, as to what protection should be afforded the public when the opening was in use. It is clear that such evidence, when presented in chief and in behalf of the person who is charged with negligence, is incompetent and irrelevant, but that is not the manner in which the evidence came into the case at bar and the *Bardel* case is not an authority upon which plaintiff can claim an erroneous ruling here. Plaintiff had brought out on cross-examination testimony from which he expected the jury to infer that no care had been used in protecting the persons using the street, from injuries through the doors being opened, and had asked the witnesses specifically as to what they did. It was clearly competent for them to thereafter show in detail what steps they had taken towards such protection. The fact that the defendant tenants could not prove directly that they had given instructions to third parties to exercise care when using the cellar opening does not deprive them of such proof when the door has been opened by the plaintiff either by evidence given directly that no such care was used or by a cross-examination of the defendants, by which he sought to establish the lack of care on defendants'

part. In such a case it is proper for a party who denies lack of care to show by direct proof the means he used to protect the public from harm. The general rule is authoritatively stated in *Wiggin* v. *Plumer* (31 N. H. 251, 269), where it is said: " No fact can in the first instance be offered in evidence unless it is material to the issue, but evidence being introduced to prove such fact, any evidence tending to disprove it thereby becomes material and admissible, whether or not it would be received if offered as direct proof of the issue in the case."

This rule has received approval by the text book writers as well as by the courts. (1 Wigm. Ev. § 89; *Dick* v. *Marvin*, 188 N. Y. 426, 430; Jones Ev. [2d ed.] § 172; *McElheny* v. *Pittsburgh R. Co.*, 147 Penn. St. 1; *McCormack* v. *Mandelbaum*, 102 App. Div. 302; *Waldron* v. *Romaine*, 22 N. Y. 368, 371; *Scattergood* v. *Wood*, 79 id. 263; *Sherfey* v. *Evansville, etc., R. R. Co.*, 121 Ind. 427.) In the section of Jones on Evidence referred to, it is said that where a party voluntarily offers testimony which is unnecessary or irrelevant to the issue, it is too late for him to object to rebutting testimony offered by the adversary upon the same subject, and it should be received. If a party is allowed to introduce irrelevant testimony it is manifestly unjust to prevent the other party from rebutting or explaining such testimony. (*Ingram* v. *Wackernagel*, 83 Iowa, 82; *Bogk* v. *Gassert*, 149 U. S. 17.)

In the case at bar it is not of particular moment whether instructions were given to third parties to insert the bar between the doors when the doors were up or not, for the accident would have happened with the doors up regardless of whether the bar was inserted in place so that the testimony, even though it had been improperly admitted, which it was not, could not have been prejudicial to the plaintiff in this case.

Nevertheless, the plaintiff cannot now complain. As was said in *Sherwood* v. *Titman* (55 Penn. St. 77, 80), " the defendant opened the door for the testimony, and cannot complain that it was not closed soon enough to suit him."

If the evidence was incompetent, the plaintiff ought not to have set the example of introducing it. (*Scattergood* v. *Wood*, 79 N. Y. 263; *Hollender* v. *New York Central & H. R. R. R. Co.*, 14 Daly, 219.)

Furthermore, if plaintiff had believed that this testimony was prejudicial, he should have asked the court to instruct the jury on the subject of the purpose of its introduction and the weight to be given to it. This he did not do and he cannot now be heard to complain that it was prejudicial or ask for a new trial on the ground of its alleged improper admission.

37

There are no other rulings upon the trial which have been called to the court's attention that present error and the motion for a new trial should be denied.

So ordered.